GIES v. ELIZABETH LAKE CORPORATION.

CORPORATIONS—LEASE TO DIRECTOR—LACHES—EQUITY.
   Stockholders, who waited more than five years before attacking lease of land for golf course by corporation to one of its directors, were guilty of laches barring all right to equitable relief, where lessee's occupation was open and notorious, and he had expended thousands of dollars in developing the pro ject. POTTER, J., dissenting.

Appeal from Oakland; Parker (James S.), J., presiding. Submitted January 17, 1930. (Docket No. 53, Calendar No. 34,647.) Decided April 24, 1930.

Bill by Fred T. Gies and another against Elizabeth Lake Corporation and others to restrain sale of corporate real estate. From decree for plaintiffs, defendants appeal. Reversed.

*Pelton & McGee,* for plaintiffs.

*Perry & Lynch,* for defendants.

POTTER, J. (*dissenting*). Plaintiffs filed a bill against defendants to restrain a proposed sale of corporate real estate, cancel an outstanding lease thereof by the corporation to defendant Shipman, and for an accounting. From a decree for plaintiffs, defendants appeal.

Plaintiffs are two stockholders of the Elizabeth Lake Corporation, organized in October, 1915, under the manufacturing and mercantile corporations act of 1903, 2 Comp. Laws 1915, §§ 9017–9053, with power to purchase, hold, and deal in real estate. It

took title to 224 acres of land near Pontiac, about 53 of which are covered by the waters of Elizabeth and Crescent lakes, and caused to be platted Elizabeth Lake Golf and Country Club Summer Homes Sites, in 1915, which plat, after official approval, was recorded in June, 1916. A strip of land on the lake front, separated from the remainder by a driveway running parallel to the shore, is platted into a double row of lots numbered from 4 to 92. The greater part of the remainder of the land is platted as three parcels or lots numbered 1, 2, and 3. The lots in the subdivided shore strip were put on the market and sold to purchasers. The defendant Shipman was engaged in the real estate business and looked after these sales on commission. The greater part of the land, outside of these shore lots, was used as a golf course. Originally there was a nine-hole course, and it was leased to one Heathfield, but the corporate officers apparently became dissatisfied with Heathfield, and, November 8, 1921, the defendant Shipman submitted a tentative proposition to the corporation to lease the golf course to a club of men interested in golf for a period of ten years or more at a certain compensation each year in addition to the taxes. The first year nothing was to be paid. The second year the taxes were to be paid, the third year $1,000 and the taxes were to be paid, the fourth year $1,500 and taxes, the fifth year $2,000 and taxes, the sixth year $2,500 and taxes, the seventh year $3,500 and taxes, the eighth year $4,000 and taxes, and the ninth year $5,000 and taxes. No such club of men was brought forward to take the lease. At the meeting held November 25, 1921, defendant Shipman advised the board he had decided he would be willing to sign a lease with the corporation upon the basis submitted by him to the directors on Novem-

ber 8th, 1921, and would agree to keep all the buildings and property in excellent shape, together with the roads, water system, etc. A lease was entered into substantially in accordance with this proposition for a period of ten years. It contained a stipulation that the lessee should have a right, at his option, to extend the lease for a further term of five years after November 15, 1931, at an annual rental of $5,000 a year, payable yearly, in advance. The lease further provided that the *officers* of the Elizabeth Lake Corporation would be permitted the use of the golf course without the payment of green fees during the period of the lease. Defendant Shipman took possession of the golf course, and ran it for some time. Later, certain other property was turned over to the defendant Shipman and an 18-hole golf course was put in operation by him. The defendant Shipman ran this golf course, collected the income and profits therefrom, paid no taxes, no rent, and only the officers of the corporation, not the directors and stockholders, unless officers, had free access to the golf course. Late in 1926 or early in 1927 the question of the sale of the property for $200,000 came up. It was discussed in the corporation meeting in February, 1927. At that time defendant Shipman claimed the corporation owed him $36,531.86, and he offered to cancel his lease if the corporation would pay him that sum and cancel its claims against him for rents and taxes. In the meantime the bill of complaint in this case had been filed, the sale was abandoned, and in June, 1928, the case went to trial on the questions of the validity of the lease and an accounting. At the meeting when Shipman's lease was authorized, but 3 of the 5 directors were present, and this colorably authorized the lease. Shipman as a corporation director voted to give Shipman, the

lessee, a lease. The corporation was organized to buy and sell real estate for profit. It had the real estate, and by this action it leased for a period of ten years most of its unsold real estate to Shipman and provided for an extension of the lease for another period of five years, thus practically disabling itself from continuing the business for which it was created.

The trial court properly set aside the lease. On the trial it was conceded Shipman had spent some time and money in connection with the property. The corporation owed him some commissions due from the sale of lots, but these commissions are not involved herein, the corporation having been made a garnishee defendant in a suit against Shipman by a third party. The court gave Shipman $25,000 for his services, and charged him with the unpaid rental of the premises in the sum of $15,000, and unpaid taxes in the sum of $7,454.05, a total of $22,454.05, leaving a balance due him of $2,545.95. We think this is all the defendant Shipman is entitled to under the facts disclosed by this record. Plaintiffs not having appealed, the decree of the trial court should be affirmed, with costs.

WIEST, C. J. (*for reversal*). The decree should be reversed and the bill dismissed, with costs to defendant Shipman.

A corporation, organized to purchase and sell real estate, may lease its holdings. A corporation may enter into a fair contract with one of its directors.

The full board of five directors authorized the lease, and had power to do so. Participation by Mr. Shipman, as a director, in such action, along with the other four directors, did not render the lease void. The lease was valid, and no court may cancel

it on the infinitesimal ground that officers of the corporation were given "the free use of the course without payment of greens fees," to the lessee. The later resolution by three members of the board of directors, of whom Mr. Shipman was one, authorizing amendment of the lease to include Mr. Shipman's heirs, even if void, is of no moment for Mr. Shipman is living. If Mr. Shipman is in default under any term of the lease, the remedy of the lessor is at law.

NORTH, J. (*concurring for reversal*). I concur in the result reached by Chief Justice WIEST. The original lease of this property for use as a golf course was unanimously authorized November 25, 1921, at a directors' meeting attended by the full board. A copy of this lease was attached to and made a part of the minutes of that meeting. The record negatives bad faith. The bill was filed June 27, 1927. In the meantime the lessee had expended thousands of dollars in developing the project. His occupation and operations were open and notorious. I think the facts are such that the plaintiffs and other stockholders who are in accord with them must be charged with notice of this lease and that they were guilty of such laches as bars all right to equitable relief. The bill is dismissed, with costs to appellants.

BUTZEL, CLARK, and SHARPE, JJ., concurred with NORTH, J. FEAD, J., took no part in this decision. McDONALD, J., did not sit.